IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SANDRA K. NAZELROD,           *

    Plaintiff,              *

v.                            *     Civil Action No. BPG-09-0636

MICHAEL J. ASTRUE,            *
Commissioner of
Social Security,              *

    Defendant.              *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MEMORANDUM

Plaintiff, Sandra K. Nazelrod, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (Paper Nos. 11, 19.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court denies plaintiff's Motion for Summary Judgment (Paper No. 11) and grants defendant's Motion for Summary Judgment (Paper No. 19).

## I. Background

Plaintiff filed for a period of disability, DIB, and SSI on November 9, 2004 alleging that she became disabled on June 1, 2004 as a result of, inter alia, "benign essential tremor," "bilateral carpal tunnel syndrome," "hypertension," and a "history of cardiopulmonary arrest with respiratory failure requiring the implantation of a pacemaker and defibrillator." (Pl.'s Mem. Supp. Mot. Summ. J., Paper No. 11-1 at 2 (citing R. at 21-22, 109).) Her applications were denied initially and on reconsideration. (R. at 59-62.) On April 22, 2008, plaintiff, represented by counsel, testified by video at a hearing before Administrative Law Judge ("ALJ") Timothy C. Pace. (R. at 609-37.) Also testifying was a qualified vocational expert ("VE"). (R. at 631-35.)

In a decision dated May 2, 2008, the ALJ denied plaintiff's application for benefits. (R. at 19-29.) On January 22, 2009, the Appeals Council held that there was no basis for granting review of the ALJ's decision. (R. at 6-9.) Plaintiff timely sought judicial review and now petitions this court for summary judgment reversing the ALJ's decision and awarding plaintiff the benefits she has requested. (Paper Nos. 1, 11.) In the alternative, plaintiff asks this court to remand the matter for further proceedings. (Id.)

## II. Standard of Review

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

The Commissioner has promulgated regulations that set forth the following five-step analysis that an ALJ must follow in determining whether a claimant is disabled:

(1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

3

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments ("Listings"). If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

**III. Discussion**

In his decision, ALJ Pace found, at step one, that plaintiff is not engaged in substantial gainful activity. (R. at 21.) At step two, he concluded that plaintiff suffers from the following severe impairments: "bronchial asthma; chronic obstructive pulmonary disease; essential tremor; hypertension; kidney stones requiring removal; hepatitis C; chronic stage III kidney disease; sinus tachycardia with irregular heartbeat requiring pacemaker; depression; generalized anxiety disorder; and mild carpal tunnel syndrome." (Id.) At step three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listings.

4

(R. at 24.) At step four, he concluded that plaintiff does not retain the RFC to perform PRW. (R. at 27.) At step five, however, the ALJ concluded that, based on plaintiff's RFC, age, education, and past work experience, plaintiff is capable of other work that exists in significant numbers in the national economy and is, therefore, not disabled. (R. at 28.)[1]

Prior to his step four and step five determination, the ALJ concluded that plaintiff retains the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she is precluded from heights, steps or hazardous machinery; she is limited to work with minimal exposure to temperature extremes or environmental irritants; and she is limited frequent [sic], but not constant, reaching, handling, and fingering. Additionally the claimant is limited to work with little decision making, but she is capable of understanding, carrying out and remembering simple instructions.

(R. at 25.)

On appeal, plaintiff argues that the ALJ committed several errors in formulating plaintiff's RFC. First, plaintiff argues that the ALJ improperly rejected plaintiff's subjective complaints of fatigue, headaches, and the effects of her tremors and carpal tunnel syndrome. (Paper No. 11-1 at 6-7.) Second, plaintiff argues that the ALJ improperly rejected the opinion of

---

[1] In reaching this conclusion, the ALJ relied on the testimony of VE Patricia Verser that an individual with plaintiff's RFC, age, education, and past work experience could perform jobs that exist in significant numbers in the national economy, such as order clerk, call out operator, or charge account clerk. (R. at 28.)

one of plaintiff's treating physicians, Dr. Martin Gallagher. (Id. at 9.)

**A.    The ALJ's Credibility Analysis**

The evaluation of a claimant's credibility as it relates to their subjective complaints of pain or other symptoms caused by their impairments is a two-step process. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. Id. Second, the ALJ must evaluate the intensity and persistence of the claimant's pain or other symptoms alleged based on all the evidence in the record, including the claimant's testimony.[2] Id. at 595. The ALJ must specifically refer to evidence informing his conclusion, including the reasons for rejecting evidence which contradicts his findings. See, e.g., Gordan v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (remanding because the ALJ failed to adequately explain basis of findings). An explanation is particularly critical when evaluating subjective symptoms. Hammond v.

---

[2] Step two of the credibility analysis involves consideration of the claimant's statements of pain and other alleged symptoms as well as factors such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatments and other measures taken for relief; and (6) other factors concerning functional

6

Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

As relevant to plaintiff's appeal, plaintiff testified at her hearing that her tremors and carpal tunnel syndrome cause hand weakness and shaking such that her hands go numb and she cannot hold onto objects, such as dishes, for even a short period of time. (R. at 612-13, 624, 633-34.) Plaintiff also testified that she has stress headaches three to five times a week that require her to lie down. (R. at 625-26.) In addition, plaintiff testified that her medications cause her fatigue to the point that she must sleep 15 hours a day, including taking at least two naps during the day for a total of three to four hours. (R. at 622.)

As part of his RFC analysis, the ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to produce [these] alleged symptoms." (R. at 26.) The ALJ concluded, however, that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Id.) Plaintiff argues that, in reaching this conclusion, the ALJ did not properly evaluate plaintiff's subjective complaints related to her hands, headaches, and fatigue. (Paper No. 11-1 at

---

limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

6-7.)

Contrary to plaintiff's assertion, the ALJ properly evaluated plaintiff's subjective complaints. With respect to plaintiff's complaints of hand weakness and instability, the ALJ concluded that these complaints are credible, but only to the extent that they limit her to "frequent, but not constant, reaching, handling and fingering." (R. at 25.) In reaching this conclusion, the ALJ expressly cited medical evidence contradicting plaintiff's complaints, such as an observation from Maryland Disability Determination Services ("DDS") consulting physician Kodush Peprah, M.D. that plaintiff had "normal hand power, handgrip, and hand dexterity" during a February 9, 2005 examination. (R. at 26 (citing R. at 142).)

Similarly, the ALJ cited an observation in the report of Sarim Mir, M.D., who examined plaintiff on June 29, 2006, that plaintiff's tremors were not interfering with her daily activities and were not serious enough to warrant medication. (Id. (citing R. at 556-57).) The ALJ also relied on evidence of plaintiff's daily activities, including plaintiff's reports that she sews, crochets, and works on crafts, which further undermine her testimony regarding the intensity and persistence of her symptoms. (R. at 27.) This constitutes substantial evidence in support of the ALJ's conclusion that plaintiff's complaints regarding her hand weakness and instability were only credible to

8

the extent that they limit her to "frequent, but not constant, reaching, handling and fingering."[3]

In addition, the ALJ properly evaluated plaintiff's complaints of headaches and fatigue.  The ALJ concluded that these complaints are credible, but only to a certain extent.  Specifically, he concluded that, while plaintiff "is capable of understanding, carrying out and remembering simple instructions," plaintiff is limited to "work with little decision making."  (R. at 25, 26.)

In reaching this conclusion, the ALJ cited to medical evidence that plaintiff was "doing better," "doing well," and "stable" on her medications, which undermines plaintiff's testimony that her medications cause her severe fatigue. (R. at 26-27 (citing R. at 437, 486, 488).)  Similarly, the ALJ cited medical evidence that plaintiff's "judgment, insight, mood and affect were within normal limits and her memory was intact," which supports the ALJ's conclusion that plaintiff's complaints about her headaches were not entirely credible.  (R. at 26 (citing R. at 429, 437).)  Finally, the ALJ noted that plaintiff did not describe any problems with concentration and completing

---

[3] In a separate portion of her memorandum, plaintiff also argues that the ALJ erred at step five by failing to properly set out in his hypothetical question to the VE plaintiff's hand-related limitations.  (Paper No. 11-1 at 8.) This argument, however, is premised on plaintiff's assertion that the ALJ erred in his RFC formulation with respect to this impairment and is,

tasks on her Function Report, which also undercuts her subjective complaints regarding the severity of her fatigue and headaches. (R. at 27 (citing R. at 101-08, 126-33).)  Taken together, this constitutes substantial evidence in support of the ALJ's conclusion that her subjective complaints of headaches and fatigue were only credible to the extent that they limited her decision-making.  Accordingly, the court concludes that the ALJ did not err in his credibility determination.[4]

---

therefore, identical to her argument that the ALJ erred in determining plaintiff's RFC.

[4] Plaintiff also argues in a separate portion of her memorandum that the ALJ did not include limitations caused by plaintiff's fatigue and headaches in his hypothetical to the VE. (Paper No. 11-1 at 8.)  In his hypothetical, however, the ALJ explicitly mentioned plaintiff's fatigue as limiting her decision-making.  (R. at 632.)  While the ALJ did not expressly mention plaintiff's headaches in his hypothetical, he included limitations in her "decision-making" ability caused by symptoms associated with headaches, namely "concentration-level problems" and "pain."  (Id.)

In addition, plaintiff argues in another portion of her memorandum that the ALJ failed to consider several statements in the record regarding her activities of daily living that substantiate her complaints of fatigue and hand instability. (Paper No. 11-1 at 10.)  Specifically, plaintiff notes that the ALJ did not consider plaintiff's reports on a Function Report that she "[c]an only do things for about 15 min at a time then have to rest sometimes lie down" and that she "can't hold on to things like I used to." (Id.)  These statements, however, are virtually identical to statements plaintiff made during her hearing, which the ALJ expressly considered in his assessment of plaintiff's RFC.  (R. at 25-26.)  Accordingly, the ALJ's failure to specifically explain whether he considered the statements in plaintiff's Function Report is immaterial.

**B. The ALJ's Consideration of Dr. Gallagher's Opinion**

As noted above, plaintiff also argues that the ALJ erred in rejecting the opinion of Dr. Martin Gallagher. (Paper No. 11-1 at 9.) Dr. Gallagher is a specialist in internal medicine who examined plaintiff on January 10, 2005 and completed a medical report form from the Maryland Department of Social Services. (R. at 134-37.) Dr. Gallagher checked boxes on the form indicating that plaintiff has "marked restrictions of daily living," "marked difficulties in maintaining social functioning," "marked difficulties in maintaining concentration, persistence or pace," and that plaintiff's medical conditions prevented her from working. (Id.)

An ALJ must give a "treating physician's" opinion controlling weight as to the nature and severity of a claimant's impairments if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (treating physician's opinion should be given significantly less weight if it is inconsistent with substantial evidence). The ALJ must also "give good reasons . . . for the weight . . . give[n] [to a claimant's] treating source's opinions." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In determining plaintiff's RFC, the ALJ gave "very little

11

weight to the report of Dr. Gallagher" because, according to the ALJ, his report "is a fill-in-the-blank form" and "[h]is findings are inconsistent with the medical record." (R. at 27.) According to plaintiff, the ALJ's treatment of Dr. Gallagher's opinion is nothing more than a "conclusory statement," which "is not a substitute for analysis." (Paper No. 11-1 at 9.) Further, according to plaintiff, a "form from treating physician [sic] should be analyzed the same way as any other treating physician's report . . . ." (Id.)

The ALJ, however, provided a detailed discussion of the medical evidence contradicting Dr. Gallagher's report. Specifically, in his step two analysis of whether plaintiff suffers from severe impairments, the ALJ discussed medical reports in the record from 17 physicians, including Dr. Gallagher. (R. at 22-24.) It is clear from this discussion that there is substantial evidence in these medical reports contradicting Dr. Gallagher's opinion that plaintiff has "marked restrictions of daily living," "marked difficulties in maintaining social functioning," "marked difficulties in maintaining concentration, persistence or pace," and that her medical conditions prevented her from working. (See, e.g., R. at 23 (during July 2006 examination, plaintiff reported to Dr. Oscar Adler that she was feeling well with no complaints other than a sore throat); id. (in December 2006, Dr. Matthew Beckwith

reported that claimant's gait, judgment, insight, mood and affect were within normal limits and her memory was intact); id. (in August 2007, Dr. Adriana Maldonado-Brem noted that plaintiff was feeling well).)

Further, the ALJ's reliance on the fact that Dr. Gallagher's report was a check-off form in giving this report less weight was proper. See, e.g., Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligations is only to check a box or fill in a blank are weak evidence at best."); O'Leary v. Schweker, 710 F.2d 1334, 1341 (8th Cir. 1993) (observing that checklist forms are entitled to little weight due to lack of explanation). Accordingly, the ALJ's conclusion that Dr. Gallagher's opinion is entitled to little weight is supported by substantial evidence and the court, therefore, concludes that the ALJ did not err in this portion of his opinion.

## IV. Conclusion

For the foregoing reasons, the court denies plaintiff's Motion for Summary Judgment (Paper No. 11), and grants defendant's Motion for Summary Judgment (Paper No. 19). A separate Order shall issue.

Date: 08-02-10          /s/
                        Beth P. Gesner
                        United States Magistrate Judge

13